## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MATTHEW ROWDEN, STEPHANIE KOONTZ, DUSTIN HEDGEPETH, and COLBY CHARRIER, on behalf of himself and all others similarly situated**<br><br>          **Plaintiffs,**<br>     -against-<br><br>**GOVERNMENT EMPLOYEE INSURANCE COMPANY, d/b/a GEICO, a Maryland corporation.**<br><br>          **Defendant.** | Case No. _____<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs MATTHEW ROWDEN, STEPHANIE KOONTZ, DUSTIN HEDGEPETH, and COLBY CHARRIER (collectively "Plaintiffs"), on behalf of themselves and all other similarly situated employees, bring this lawsuit against Defendant Government Employees Insurance Company Inc. d/b/a GEICO ("GEICO" or "Defendant") seeking all available relief for Defendant's violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* and applicable provisions of Vermont, Utah, and Maine law. Plaintiffs allege as follows:

### INTRODUCTION

1.      Plaintiffs bring this lawsuit as a national collective action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), on behalf of themselves and all other persons similarly situated who suffered damages as a result of Defendant's violations of the FLSA (collectively "FLSA Collective" or "putative Collective Members").

2.      Plaintiffs also bring this lawsuit as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and all other persons similarly situated who suffered damages as a result of Defendant's violations of Vermont, Utah, and Maine law.

1

3.      Plaintiffs are current and former non-exempt, hourly employees who work or worked for GEICO as Auto Claim and/or Damage Adjusters throughout the United States. In this role, Plaintiffs investigated insurance claims to ascertain the extent of any liability on behalf of GEICO, who furnishes car insurance.

4.      Plaintiffs seek to represent other current and former non-exempt, hourly employees of Defendant who work or worked for GEICO as Auto Claim and/or Damage Adjusters, including similar roles with different titles (collectively "Adjusters"), throughout the United States.

5.      As more fully described below, during the relevant time periods, Defendant has engaged in unlawful wage payment patterns and practices by failing to meet the requirements of the FLSA and applicable provisions of Vermont, Utah, and Maine law.

6.      Plaintiffs and putative Collective Members regularly perform off-the-clock work for which they are not adequately compensated. Specifically, Plaintiffs and putative Collective Members must complete a certain number of claims or inspections per day (their "required quota"), and pressure from GEICO to meet these quotas within allotted shift hours each day often causes Plaintiffs and putative Collective Members to work off-the-clock before their scheduled shifts begin, after their scheduled shifts end, and during unpaid meal breaks. Failure to meet the quotas within allotted shift hours results in negative implications for the performance metrics of Plaintiffs and putative Collective Members, including compensation ramifications and/or disciplinary action. Plaintiffs and putative Collective Members are also required to work off-the-clock to attend meetings outside of their scheduled shifts and without pay.

7.      In addition, Plaintiffs and putative Collective Members regularly work through time allocated for unpaid meal periods. Even when they do receive some form of meal break, it

2

is often interrupted as Plaintiffs and putative Collective Members are encouraged and often required to perform work during their break, and thus that working time is uncompensated.

8.      Because of these policies and practices, Defendant does not pay Plaintiffs and putative Collective Members for all hours worked, including minimum wage and overtime wages. The hours that Defendant requires Plaintiffs and putative Collective Members to work without compensation deprives them of substantial amounts of pay to which they are entitled under the FLSA and applicable provisions of Vermont, Utah, and Maine law.

9.      As a result of this conduct, Defendant fails to pay Plaintiffs and putative Collective Members all wages due and owing after separation from employment.

10.     Defendant further fails to provide Plaintiffs and putative Collective Members with accurate, itemized wage statements.

11.     Plaintiffs seek full compensation on behalf of themselves and putative Collective Members for all unpaid wages, including unpaid overtime. Plaintiffs also seek statutory penalty wages, declaratory relief, and injunctive relief, including restitution. Finally, Plaintiffs seek reasonable attorneys' fees and costs under the FLSA and applicable provisions of Vermont, Utah, and Maine law.

## PARTIES

12.     Plaintiff MATTHEW ROWDEN ("Plaintiff Rowden") has worked for Defendant as a non-exempt, hourly paid Adjuster in Vermont since February 2018. Plaintiff Rowden is over eighteen years of age and resides in the State of Vermont.

13.     Plaintiff STEPHANIE KOONTZ ("Plaintiff Koontz") has worked for Defendant as a non-exempt, hourly paid Adjuster in Utah since May 2016. Plaintiff Koontz is over eighteen years of age and resides in the State of Utah.

3

14.     Plaintiff DUSTIN HEDGEPETH ("Plaintiff Hedgepeth") worked for Defendant as a non-exempt, hourly paid Adjuster in Glen Burnie, Maryland from December 2014 to July 2017 and thereafter in Odessa and Midland, Texas until September 2018. Plaintiff Hedgepeth is over eighteen years of age and was a resident of Maryland or Texas at all relevant times described herein.

15.     Plaintiff COLBY CHARRIER ("Plaintiff Charrier") worked for Defendant as a non-exempt, hourly paid Adjuster in Saco, Maine from approximately December 2015 to June 2018. Plaintiff Charrier is over eighteen years of age and was a resident of Maine at all relevant times described herein.

16.     Plaintiffs' duties as Adjusters include inspecting vehicles for collision and comprehensive damages; customer service via the phone or in-person engagement; submitting claims on behalf of individuals for vehicle repairs; submitting online forms in real time; and issuing checks on behalf of GEICO for insurance payouts.

17.     Defendant GEICO is a Maryland corporation with a principal place of business in Maryland. On information and belief, Defendant is a wholly owned subsidiary of Berkshire Hathaway, Inc. and its headquarters are located at 5260 Western Avenue, Chevy Chase Village, Maryland, 20815. Defendant does business throughout the United States and maintains 18 regional offices throughout the United States.

18.     In addition to Plaintiffs, Defendant has employed numerous other employees, who like Plaintiffs, are non-exempt employees engaged in interstate commerce. Further, Defendant is engaged in interstate commerce because it conducts business with customers across state lines.

19.     At all relevant times, Defendant has been an employer within the meaning of the FLSA under 29 U.S.C. § 203(d).

4

20.     At all relevant times, Defendant has been an enterprise within the meaning of the FLSA under 29 U.S.C. § 203(r).

21.     Plaintiffs and Putative Collective members were and are employees of Defendant within the meaning of 29 U.S.C. § 203(e).

22.     At all relevant times, Defendant has done business under the laws of the State of Maryland, maintains its corporate headquarters in the State of Maryland, and is "at home" in the State of Maryland.

**JURISDICTION AND VENUE**

23.     The FLSA authorizes private rights of action to recover damages for violation of the FLSA's wage and hour provisions. 29 U.S.C. § 216(b). This Court has original federal question jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the various state law class claims alleged pursuant to 28 U.S.C. § 1367(a) because they are so related to this action that they form part of the same case or controversy.

24.     Defendant is subject to general personal jurisdiction in Maryland because GEICO maintains its headquarters and principal place of business in Chevy Chase, Maryland and therefore is fairly considered "at home" in Maryland.

25.     Venue in this district is proper pursuant to 28 U.S.C. § 1391. At all material times Defendant is incorporated in the State of Maryland and has its headquarters and principal place of business in Maryland.  In addition, Defendant has been actively conducting business in the State of Maryland and within the geographic area encompassing the District of Maryland.

**FACTUAL ALLEGATIONS**

26.     Defendant is in the business of providing vehicle insurance, property insurance, and business insurance. Defendant operates in all fifty states.

27.     Plaintiffs and putative Collective Members are current or former Adjusters throughout the United States.[1] The duties of Adjusters, including Plaintiffs, include but are not limited to processing insurance claims, calling customers, inspecting vehicles for collision and comprehensive damages, maintaining and managing accurate funds for the issuance of claim payments, submitting reports online in real time, and driving to customer homes or working in auto body shops to assess vehicle damage.

28.     As Adjusters, Plaintiffs and putative Collective Members are expected to meet GEICO's required quota of processing or working on at least ten claims or inspections per day and as many as thirty customer calls each day. Plaintiffs are informed, believe, and thereon allege that the policies and practices of Defendant have at all relevant times been similar for Plaintiffs and the putative Collective Members, regardless of location in the United States.

29.     While working for Defendant, Plaintiffs and putative Collective Members are scheduled to work approximately seven and a half hours per day, five days a week, for a total of approximately 37.5 hours per week. Plaintiffs and putative Collective Members work these scheduled hours. However, Plaintiffs and putative Collective Members are regularly required by GEICO management to work additional hours beyond this scheduled time while off-the-clock and without receiving compensation. In fact, Plaintiffs and putative Collective Members typically work eight and a half to ten hours per day to fulfill the required workload and do not receive pay for all time worked in violation of the FLSA. For numerous workweeks during their employment by GEICO, Plaintiffs and putative Collective Members worked off-the-clock and without compensation during overtime hours.

---

[1] As reflected in the Collective definition below, the putative Collective does not include Adjusters in California, Colorado, Florida, Massachusetts, New Mexico, New York, North Carolina, or Virginia.

30.     GEICO disincentivizes and discourages Plaintiffs and putative Collective Members from reporting this off-the-clock or unrecorded time because reporting such time would negatively impact Plaintiffs and putative Collective Members' productivity metrics and evaluations. If an employee does not meet the required quota of claims, inspections and/or customer calls, the consequence is being written up or placed on probation or reduced performance metric scores causing negative ramifications for pay increases and promotion opportunities.

31.     In some instances, Plaintiffs and putative Collective Members begin the workday one hour prior to the start of their scheduled shifts to perform work activities which include, among other tasks, handling claims and calling customers and repair shops. That time worked is unpaid. Moreover, under Defendant's company-wide practice, Defendant requires Plaintiffs and putative Collective Members to log into Defendant's online system to submit claims and other documentation in real time. Therefore, Defendant knows or should know that work is being performed on its online system without compensation.

32.     Plaintiffs and putative Collective Members continue working after their scheduled shifts end to complete tasks including, but not limited to, submitting paperwork and claims, and following up on customer calls. These tasks are completed while being logged into Defendant's online system and are tracked in real time. Plaintiffs and putative Collective Members are not compensated for this time that Defendant requires, suffers, and/or permits them to work.

33.     Furthermore, Plaintiffs and putative Collective Members frequently work during unpaid meal periods. For example, they are generally allocated a 30 to 45-minute meal break to be taken at no specific time during a shift.  But, due to Defendant's required workload and quotas, Plaintiffs and putative Collective Members are often unable to take such breaks at all. Even when

they do receive some form of meal break, Plaintiffs and putative Collective Members are often interrupted to perform work or answer customer calls, even though they are off-the-clock in Defendant's timekeeping records. As a result, Plaintiffs and putative Collective Members regularly work through unpaid time that is allocated for a meal break. Defendant knows or should know about such uncompensated work performed during unpaid meal breaks.

34.     On information and belief, Defendant and its managers routinely manipulate the timecards of these employees to make it appear that they took an unpaid meal break in order to avoid paying additional wages and penalties.

35.     Defendant also requires Plaintiffs and putative Collective Members to work off-the-clock to attend meetings, outside of their scheduled shifts and without pay.

36.     Plaintiffs and putative Collective Members use their personal vehicles to travel to semi-annual conference meetings. Travel time as well as the time spent at the conference meetings is also unpaid.

37.     In addition to claims and/or inspections quotas, Defendant utilizes a call rating system to rate call volume and efficiency in answering customer calls. As a result, Plaintiffs and putative Collective Members take customer calls before, during, and after scheduled shifts and must bring their cell phones to their unpaid meal breaks as a means of keeping the call answer rate high.

38.     All of this time that Defendant requires Plaintiffs and putative Collective Members to work without compensation deprives them of substantial amounts of pay to which they are entitled under the FLSA and applicable provisions of Vermont, Utah, and Maine law, including overtime premium pay for hours worked in excess of 40 per workweek.

39.     Defendant maintains time records for all its Adjusters throughout the United States. However, those time records fail to accurately reflect all of Plaintiffs and putative Collective Members' hours worked, based upon Defendant's policies and procedures described herein for requiring Plaintiffs and putative Collective Members to work off the clock, during meal breaks, and without compensation.

40.     As a result, Defendant does not provide Plaintiffs and putative Class Members with accurate wage statements. These workers receive wage statements that do not reflect all hours worked, pay for missed and "on duty" meal breaks, and applicable overtime premiums.

41.     In addition, Defendant does not provide Plaintiffs and putative Class Members with full payment of all wages owed at the end of employment. These workers are owed wages and premium pay for all time worked, including overtime, when their employment ends. These amounts remain unpaid after voluntary and involuntary termination.

42.     Plaintiffs are informed, believe, and thereon allege that Defendant's unlawful conduct has been widespread, repeated, and consistent as to the putative Collective Members and throughout Defendant's operations in the United States.  Defendant's unlawful conduct and pay practices stem from a corporate policy to limit labor expenses.

43.     Upon information and belief, Defendant has not inquired into whether it paid Plaintiffs and putative Collective Members for all time worked.

44.     Defendant's conduct was knowing, willful, carried out in bad faith, and caused significant damages to Plaintiffs and putative Collective Members in an amount to be determined at trial. Defendant did not take requisite steps to ensure that Plaintiffs and putative Collective Members were paid for all time worked. Upon information and belief, Defendant did not conduct

any study or audit of its compensation practices to ensure that Plaintiffs and putative Collective Members did not perform work without compensation.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

45.     Plaintiffs bring the First Count (the FLSA claim) as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and a proposed collection of similarly situated employees defined as:

> All current and former non-exempt classified employees of Defendant working as Auto Claim and/or Damage Adjusters (including similar roles with different titles) throughout the United States (with the exception of those employed in California, Colorado, Florida, Massachusetts, New Mexico, New York, North Carolina, and Virginia) during the time period from three years prior to the filing of the complaint until resolution of this action. (referred to herein as the "putative Collective Members" or "members of the Collective").

46.     Plaintiffs, on behalf of themselves and other similarly situated persons defined above, seek relief on a collective basis challenging Defendant's policies and practices of failing to accurately record all hours worked and failing to properly pay for all hours worked, including overtime compensation and required minimum wages. The number and identity of other similarly situated persons yet to opt-in and consent to be a party-Plaintiff may be determined from Defendant's records, and potential opt-ins may be easily and quickly notified of the pendency of this action.

47.     Plaintiffs' claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to § 216(b) of the FLSA because Plaintiffs' FLSA claims are similar to the claims of the members of the Collective.

48.     The members of the Collective are similarly situated, as they have substantially similar job duties and requirements and are subject to a common policy, practice, or plan that

requires them to perform work "off-the-clock" and without compensation in violation of the FLSA.

49.    Plaintiffs are representative of the members of the Collective and are acting on behalf of their interests as well as their own interests in bringing this action.

50.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Collective. Plaintiffs have retained counsel competent and experienced in employment and wage and hour class action and collective action litigation.

51.    The similarly situated members of the Collective are known to Defendant, are readily identifiable, and may be located through Defendant's records.  These similarly situated employees may readily be notified of this action and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

52.    Plaintiffs contemplate providing a notice or notices to all the employees, as approved by the Court, to be delivered via United States Mail. The notice or notices shall, among other things, advise each of the FLSA employees that they shall be entitled to "opt in" to the FLSA action if they so request by the date specified within the notice, and that any judgment on the FLSA action, whether favorable or not, entered in this case will bind all FLSA collective members who timely request inclusion in the collective.

## **VERMONT CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23**

53.    Plaintiff Rowden brings the Second and Third Causes of Action under Rule 23 of the Federal Rules of Civil Procedure.

54.    The putative Vermont Class is defined as follows:

All current and former non-exempt classified employees of Defendant working as Auto Claim and/or Damage Adjusters (including similar roles with different titles) throughout Vermont during the time period from six years prior to the filing of the complaint until resolution of this action. (referred to herein as the "Vermont Class Members" or "members of the Vermont Class").

55.     This action is properly maintainable as a class action under Federal Rules of Civil Procedure 23(b)(3).

56.     <u>Numerosity</u>:  Defendant has employed potentially hundreds of Adjusters during the applicable statutory period. Vermont Class Members are therefore far too numerous to be individually joined in this lawsuit, making joinder impracticable. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice Vermont Class Members and Defendant. The identities of the Vermont Class Members will be determined from Defendant's records, as will the compensation paid to each of them.

57.     <u>Commonality</u>:  There are questions of law and fact common to Plaintiff Rowden and Vermont Class Members that predominate over any questions affecting only individual members of the Vermont Class. These common questions of law and fact include, but are not limited to:

      i.      Whether Defendant failed to pay Plaintiff Rowden and Vermont Class Members for all hours worked;

      ii.      Whether Defendant failed to pay Plaintiff Rowden and Vermont Class Members at an overtime rate for all hours worked in excess of 40 in a workweek;

      iii.      Whether Defendant failed to authorize and permit Plaintiff Rowden and Vermont Class Members to take a bona fide and uninterrupted meal or rest break to which they were entitled under Vermont law;

12

iv.     Whether Defendant failed to keep accurate records of Plaintiff Rowden and Vermont Class Members' hours of work and wages;

v.     Whether Plaintiff Rowden and Vermont Class Members are entitled to civil and statutory penalties; and

vi.     The proper formula for calculating restitution, damages and penalties owed to Plaintiff Rowden and Vermont Class Members as alleged herein.

58.    <u>Typicality</u>:  Plaintiff Rowden's claims are typical of the claims of the Vermont Class. Defendant's common course of conduct in violation of law as alleged herein caused Plaintiff Rowden and Vermont Class Members to sustain the same or similar injuries and damages. Plaintiff Rowden's claims are thereby representative of and co-extensive with the claims of the Class.

59.    <u>Adequacy of Representation</u>:  Plaintiff Rowden does not have any conflicts of interest with other Vermont Class Members and will prosecute the case vigorously on behalf of the Vermont Class. Counsel representing Plaintiff Rowden is competent and experienced in litigating complex cases and large class actions, including wage and hour cases. Plaintiff Rowden will fairly and adequately represent and protect the interests of the Vermont Class Members.

60.    <u>Superiority of Class Action</u>:  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all proposed Vermont Class Members is not practicable, and questions of law and fact common to the Vermont Class predominate over any questions affecting only individual members of the Vermont Class. Each proposed Vermont Class Member has been damaged and is entitled to recovery by reason of Defendant's illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

61.     In the alternative, the Vermont Class may be certified because the prosecution of separate actions by the individual Vermont Class Members would create a risk of inconsistent or varying adjudication with respect to individual Vermont Class Members which would establish incompatible standards of conduct for Defendant.

62.     If each individual Vermont Class Member were required to file an individual lawsuit, Defendant would necessarily gain an unconscionable advantage because Defendant would be able to exploit and overwhelm the limited resources of each Vermont Class Member with Defendant's vastly superior financial legal resources.

63.     Requiring each individual Vermont Class Member to pursue an individual remedy would also discourage the assertion of lawful claims by the Vermont Class Members who would be disinclined to pursue these claims against Defendant because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers, and well-being.

## UTAH CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23

64.     Plaintiff Koontz brings the Fourth through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure.

65.     The putative Utah Class is defined as follows:

All current and former non-exempt classified employees of Defendant working as Auto Claim and/or Damage Adjusters (including similar roles with different titles) throughout Utah within the applicable statutory period. (referred to herein as the "Utah Class Members" or "members of the Utah Class").

66.     This action is properly maintainable as a class action under Federal Rules of Civil Procedure 23(b)(3).

67.     Numerosity: Defendant has employed potentially hundreds of Adjusters during the applicable statutory period. Utah Class Members are therefore far too numerous to be individually joined in this lawsuit, making joinder impracticable. As such, a class action is a reasonable and

14

practical means of resolving these claims. To require individual actions would prejudice Utah Class Members and Defendant. The identities of the Utah Class Members will be determined from Defendant's records, as will the compensation paid to each of them.

68.    <u>Commonality</u>:  There are questions of law and fact common to Plaintiff Koontz and Utah Class Members that predominate over any questions affecting only individual members of the Utah Class. These common questions of law and fact include, but are not limited to:

     i.    Whether Defendant failed to pay Plaintiff Koontz and Utah Class Members for all hours worked;

     ii.    Whether Defendant failed to pay Plaintiff Koontz and Utah Class Members at least minimum wage for all hours worked;

     iii.    Whether Defendant timely paid Utah Class Members all wages due upon separation;

     iv.    Whether Defendant failed to keep true and accurate records of Plaintiff Koontz and Utah Class Members' hours of work and wages;

     v.    Whether Plaintiff Koontz and Utah Class Members are entitled to civil and statutory penalties; and

     vi.    The proper formula for calculating restitution, damages and penalties owed to Plaintiff Koontz and Utah Class Members as alleged herein.

69.    <u>Typicality</u>:  Plaintiff Koontz's claims are typical of the claims of the Utah Class. Defendant's common course of conduct in violation of law as alleged herein caused Plaintiff Koontz and Utah Class Members to sustain the same or similar injuries and damages. Plaintiff Koontz's claims are thereby representative of and co-extensive with the claims of the Utah Class.

70.    Adequacy of Representation:  Plaintiff Koontz does not have any conflicts of interest with other Utah Class Members and will prosecute the case vigorously on behalf of the Utah Class. Counsel representing Plaintiff Koontz is competent and experienced in litigating complex cases and large class actions, including wage and hour cases. Plaintiff Rowden will fairly and adequately represent and protect the interests of the Utah Class Members.

71.    Superiority of Class Action:  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all proposed Utah Class Members is not practicable, and questions of law and fact common to the Utah Class predominate over any questions affecting only individual members of the Utah Class. Each proposed Utah Class Member has been damaged and is entitled to recovery by reason of Defendant's illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

72.    In the alternative, the Utah Class may be certified because the prosecution of separate actions by the individual Utah Class Members would create a risk of inconsistent or varying adjudication with respect to individual Utah Class Members which would establish incompatible standards of conduct for Defendant.

73.    If each individual Utah Class Member were required to file an individual lawsuit, Defendant would necessarily gain an unconscionable advantage because Defendant would be able to exploit and overwhelm the limited resources of each Utah Class Member with Defendant's vastly superior financial legal resources.

74.    Requiring each individual Utah Class Member to pursue an individual remedy would also discourage the assertion of lawful claims by the Utah Class Members who would be

disinclined to pursue these claims against Defendant because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers, and well-being.

## MAINE CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23

75.     Plaintiff Charrier brings the Eighth and Ninth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure.

76.     The putative Maine Class is defined as follows:

All current and former non-exempt classified employees of Defendant working as Auto Claim and/or Damage Adjusters (including similar roles with different titles) throughout Maine during the time period from six years prior to the filing of the complaint until resolution of this action. (referred to herein as the "Maine Class Members" or "members of the Maine Class").

77.     This action is properly maintainable as a class action under Federal Rules of Civil Procedure 23(b)(3).

78.     Numerosity:  Defendant has employed potentially hundreds of Adjusters during the applicable statutory period. Maine Class Members are therefore far too numerous to be individually joined in this lawsuit, making joinder impracticable. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice Maine Class Members and Defendant. The identities of the Maine Class Members will be determined from Defendant's records, as will the compensation paid to each of them.

79.     Commonality:  There are questions of law and fact common to Plaintiff Charrier and Maine Class Members that predominate over any questions affecting only individual members of the Maine Class. These common questions of law and fact include, but are not limited to:

i.     Whether Defendant failed to pay Plaintiff Charrier and Maine Class Members for all hours worked;

17

ii.      Whether Defendant failed to pay Plaintiff Charrier and Maine Class Members at an overtime rate for all hours worked in excess of 40 in a workweek;

iii.    Whether Defendant failed to authorize and permit Plaintiff Charrier and Maine Class Members to take a bona fide and uninterrupted meal or rest break to which they were entitled under Maine law;

iv.    Whether Defendant failed to keep accurate records of employees' hours of work and wages;

v.     Whether Plaintiff Charrier and Maine Class Members are entitled to civil and statutory penalties; and

vi.    The proper formula for calculating restitution, damages and penalties owed to Plaintiff Charrier and Maine Class Members as alleged herein.

80.    <u>Typicality</u>:  Plaintiff Charrier's claims are typical of the claims of the Maine Class. Defendant's common course of conduct in violation of law as alleged herein caused Plaintiff Charrier and Maine Class Members to sustain the same or similar injuries and damages. Plaintiff Charrier's claims are thereby representative of and co-extensive with the claims of the Class.

81.    <u>Adequacy of Representation</u>:  Plaintiff Charrier does not have any conflicts of interest with other Maine Class Members and will prosecute the case vigorously on behalf of the Maine Class. Counsel representing Plaintiff Charrier is competent and experienced in litigating complex cases and large class actions, including wage and hour cases. Plaintiff Charrier will fairly and adequately represent and protect the interests of the Maine Class Members.

82.    <u>Superiority of Class Action</u>:  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all proposed Maine

Class Members is not practicable, and questions of law and fact common to the Maine Class predominate over any questions affecting only individual members of the Maine Class. Each proposed Maine Class Member has been damaged and is entitled to recovery by reason of Defendant's illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

83.    In the alternative, the Maine Class may be certified because the prosecution of separate actions by the individual Maine Class Members would create a risk of inconsistent or varying adjudication with respect to individual Maine Class Members which would establish incompatible standards of conduct for Defendant.

84.    If each individual Maine Class Member were required to file an individual lawsuit, Defendant would necessarily gain an unconscionable advantage because Defendant would be able to exploit and overwhelm the limited resources of each Maine Class Member with Defendant's vastly superior financial legal resources.

85.    Requiring each individual Maine Class Member to pursue an individual remedy would also discourage the assertion of lawful claims by the Maine Class Members who would be disinclined to pursue these claims against Defendant because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers, and well-being.

**FIRST CAUSE OF ACTION**
**Failure to Pay Overtime Wages**
**in Violation of Fair Labor Standards Act (29 U.S.C. § 207)**
**(Brought on behalf of Plaintiffs and the putative Collective Members)**

86.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

87.     The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times their regular hourly rate for all hours worked in excess of 40 hours per week.  29 U.S.C. § 207(a)(1).

88.     At all times material herein, Plaintiffs and putative Collective Members are or were covered employees entitled to the rights, protections, and benefits provided under the FLSA.

89.     Defendant is a covered employer required to comply with the FLSA's mandates.

90.     Throughout the relevant time period, Plaintiffs routinely performed work-related tasks before and after scheduled shifts without compensation. Upon information and belief, Defendant treated putative Collective Members similarly with respect to "off-the-clock" work.

91.     Defendant also expected and required Plaintiffs and putative Collective Members to be available to work and/or to be on duty during time allocated for meal breaks, and thus the meal breaks were fully compensable time.

92.     Accordingly, consistent with the policies and procedures set up by Defendant, Plaintiffs and putative Collective Members performed work for which they were not compensated. Defendant's policies and practices favored Defendant at the expense of Plaintiffs and putative Collective members.

93.     Defendant has also violated the FLSA by failing to keep required, accurate records of all hours worked by Plaintiffs and putative Collective Members.  29 U.S.C. § 211(c).

94.     These uniform policies and practices, in violation of the FLSA, have been applied to current and former non-exempt, hourly Adjusters throughout the United States. Plaintiffs and putative Collective Members have been harmed as a direct and proximate result of Defendant's unlawful conduct because they have been deprived of wages owed for work they performed and from which Defendant derived a direct and substantial benefit.

95.     Defendant's failure to pay overtime to Plaintiffs and putative Collective Members, in violation of the FLSA, was willful and not based on a good faith belief that its conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Accordingly, a three-year limitations period should apply to Plaintiffs and putative Collective Members' claims.

96.     Because of Defendant's willful violation, Plaintiffs and putative Collective Members are also due an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

97.     Plaintiffs and putative Collective Members are further entitled to reasonable attorneys' fees and costs of the action in addition to any judgment awarded.

98.     Wherefore, Plaintiffs and putative Collective Members request relief as hereinafter provided.

**SECOND CAUSE OF ACTION**
**Failure to Pay at Least Minimum Wage for All Hours Worked**
**in Violation of 21 V.S.A. § 384(a)**
**(Brought on behalf of Plaintiff Rowden and the Vermont Class Members)**

99.     Plaintiff Rowden re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

100.     It is the declared policy of the State of Vermont that all employees "should receive wages sufficient to provide adequate maintenance and to protect their health, and to be fairly commensurate with the value of the services rendered." 21 V.S.A. § 381.

101.     At all relevant times, Plaintiff Rowden and Vermont Class Members were or are employees within the meaning of 21 V.S.A. § 383(2).

102.     At all relevant times, Defendant has been an employer within the meaning of 21 V.S.A. § 382.

103.    Under Vermont law, 21 V.S.A. § 384(a), an employer must pay its employees for all hours worked at an hourly rate equal to or greater than the declared minimum wage.

104.    Defendant implemented a policy and practice whereby Plaintiff Rowden and Vermont Class Members are forced to work off-the-clock before and after scheduled shifts to meet Defendant's required quota.

105.    Moreover, Defendant implemented a policy and practice whereby Plaintiff Rowden and Vermont Class Members' allocated meal periods are skipped, subject to interruption, or otherwise not duty-free, and thus that is compensable time worked.

106.    By failing to pay Plaintiff Rowden and Vermont Class Members their earned wages, including wages for time worked before and after scheduled shifts, working or "on call" time during unpaid meal breaks, and time spent traveling to and working at conferences, Defendant's conduct described in the above paragraphs violates 21 V.S.A. § 384(a).

107.    Pursuant to 21 V.S.A. § 395, Defendant's failure to comply with 21 V.S.A. § 384(a) entitles Plaintiff Rowden and Vermont Class Members to recover their unpaid wages, as well as liquidated damages, reasonable attorneys' fees, and costs.

108.    Pursuant to 21 V.S.A. § 511, Plaintiff Rowden and Vermont Class Members seek damages for the period beginning six years prior to the filing of this lawsuit.

109.    Plaintiff and Vermont Class Members further seek declaratory relief stating Defendant has violated and is in violation of 21 V.S.A. § 384(a) for failing to compensate Plaintiff Rowden and Vermont Class Members at least the minimum wage for all hours worked.

110.    Wherefore, Plaintiff Rowden and Vermont Class Members request relief as hereinafter provided.

### THIRD CAUSE OF ACTION
**Failure to Pay Overtime Wages
in Violation of 21 V.S.A. § 384(b)
(Brought on behalf of Plaintiff Rowden and the Vermont Class Members)**

111.     Plaintiff Rowden re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

112.     Under Vermont law, 21 V.S.A. § 384(b), an employer "shall not pay an employee less than one and one-half times the regular wage rate for any work done by the employee in excess of 40 hours during a workweek."

113.     Defendant's conduct, as set forth above, in failing to pay Plaintiff Rowden and Vermont Class Members wages for all hours worked, including overtime wages for hours worked in excess of 40 in a week, violates 21 V.S.A. § 384(b).

114.     Pursuant to 21 V.S.A. § 395, Defendant's failure to comply with 21 V.S.A. § 384(b) entitles Plaintiff Rowden and Vermont Class Members to recover their unpaid wages, as well as liquidated damages, reasonable attorneys' fees, and costs.

115.     Pursuant to 21 V.S.A. § 511, Plaintiff Rowden and Vermont Class Members seek damages for the period beginning six years prior to the filing of this lawsuit.

116.     Plaintiff Rowden and Vermont Class Members further seek declaratory relief stating Defendant has violated and is in violation of 21 V.S.A. § 384(b) for failing to pay Plaintiff Rowden and Vermont Class Members overtime wages for all hours worked in excess of 40 in a week.

117.     Wherefore, Plaintiff Rowden and Vermont Class Members request relief as hereinafter provided.

### FOURTH CAUSE OF ACTION
**Failure to Timely Pay All Wages Due in Violation of Utah Code § 34-28-3**
**(Brought on behalf of Plaintiff Koontz and the Utah Class Members)**

118.    Plaintiff Koontz re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

119.    At all relevant times, Defendant was an employer within the meaning of Utah Code § 34-28-2.

120.    Utah Code § 34-28-3(1) requires Defendant to pay the wages earned by an employee at regular intervals.

121.    Utah Administrative Code § R610-1-3 defines "hours employed" as:

[A]ll time during which an employee is required to be working, to be on the employer's premises ready to work, to be on duty, to be at a prescribed work place, to attend a meeting or training, and for time utilized during established rest or break periods excluding meal periods of 30 minutes or more where the employee is relieved of all responsibilities.

122.    Defendant implemented a policy and practice whereby Plaintiff Koontz and Utah Class Members are forced to work before and after scheduled shifts to meet Defendant's required quota.

123.    Moreover, Defendant implemented a policy and practice whereby Plaintiff Koontz and Utah Class Members' allocated meal periods are skipped, subject to interruption, or otherwise not duty-free, and thus that is compensable time worked.

124.    By failing to pay Plaintiff Koontz and Utah Class Members their earned wages, including wages for time worked before and after scheduled shifts, working or "on call" time during unpaid meal breaks, and time spent traveling to and working at conferences, Defendant failed to pay Plaintiff Koontz and Utah Class members the full amount of their earned wages when the same became due and payable.

24

125.     Pursuant to Utah Code § 34-28-9.5(2), Plaintiff Koontz may file this claim without exhausting any administrative remedies since she is filing this claim individually and on behalf of the Utah Class, and the aggregate amount of the Utah Class's combined claim is greater than $10,000.

126.     Due to Defendant's violation of Utah Code § 34-28-3, Plaintiff Koontz and Utah Class Members are entitled to the full amount of wages due, statutory damages pursuant to Utah Code §§ 34-28-9.5(3) and 34-28-5, costs of litigation and attorneys' fees as provided by Utah Code § 34-27-1, pre-and post-judgment interest as provided by law; and any other relief as the Court deems fair and equitable.

127.     Plaintiff Koontz and Utah Class Members further seek declaratory relief stating Defendant has violated and is in violation of Utah Code § 34-28-3 for failing to compensate Plaintiff Koontz and Utah Class Members for the full amount of their earned wages when the same became due and payable.

128.     Wherefore, Plaintiff Koontz and Utah Class Members request relief as hereinafter provided.

### FIFTH CAUSE OF ACTION
**Failure to Pay Minimum Wage in Violation of Utah Code § 34-40-103**
**(Brought on behalf of Plaintiff Koontz and the Utah Class Members)**

129.     Plaintiff Koontz re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

130.     Utah Code § 34-40-103 prohibits employers from paying any private or public employee less than the minimum wage for all hours worked.

131.     Defendant's conduct, as set forth above, in failing to pay Plaintiff Koontz and Utah Class Members at least the minimum fair wage for all hours worked, including time worked before

and after scheduled shifts, working or "on call" time during unpaid meal breaks, and time spent traveling to and working at conferences, violates Utah Code § 34-40-103.

132.    Pursuant to Utah Code § 34-40-205, Defendant's failure to comply with Utah Code § 34-40-103 entitles Plaintiff Koontz and Utah Class Members to recover the full amount of their unpaid wages, along with interest, reasonable attorneys' fees, and costs.

133.    Wherefore, Plaintiff Koontz and Utah Class Members request relief as hereinafter provided.

**SIXTH CAUSE OF ACTION**
**Failure to Pay All Wages Due Upon Separation**
**in Violation of Utah Code § 34-28-5**
**(Brought on behalf of Plaintiff Koontz and the Utah Class Members)**

134.    Plaintiff Koontz re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

135.    Utah Code § 34-28-5(1)(a) states, in relevant part, that "[w]hen an employer separates an employee from the employer's payroll the unpaid wages of the employee become due immediately, and the employer shall pay the wages to the employee within 24 hours of the time of separation at the specified place of payment."

136.    As described above, Defendant enacted policies and practices that deprived Plaintiff Koontz and Utah Class members compensation for all hours worked. As a result, Defendant failed to pay Plaintiff Koontz and Utah Class Members all wages due and owing after separation from employment in violation of Utah Code § 34-28-5(1)(a).

137.    In failing to pay all wages due upon separation from employment, Defendant acted as a free agent, determined its own actions, was not responsible to, nor coerced by any other person, entity or authority. Defendant knew that it possessed information regarding hours worked and the

amount of wages due to Plaintiff Koontz and Utah Class members at the date of separation. Defendant was capable of timely paying all wages earned and due.

138.    Defendant's failure to make payment of Plaintiff Koontz and Utah Class Members' final wages when due was willful and continuous.

139.    Pursuant to Utah Code § 34-28-9.5(2), Plaintiff Koontz may file this claim without exhausting any administrative remedies since she is filing this claim individually and on behalf of the Utah Class, and the aggregate amount of the Utah Class's combined claim is greater than $10,000.

140.    Due to Defendant's violation of Utah Code § 34-28-5(1), Plaintiff Koontz and Utah Class Members are entitled to the full amount of wages due, statutory damages pursuant to Utah Code §§ 34-28-9.5(3) and 34-28-5, costs of litigation and attorneys' fees as provided by Utah Code § 34-27-1, pre-and post-judgment interest as provided by law; and any other relief as the Court deems fair and equitable.

141.    Plaintiff Koontz and Utah Class Members further seek declaratory relief stating Defendant has violated and are in violation of Utah Code § 34-28-5 for failing to pay all wages due upon separation.

142.    Wherefore, Plaintiff Koontz and Utah Class Members request relief as hereinafter provided.

## SEVENTH CAUSE OF ACTION
### Failure to Keep True and Accurate Records of All Hours Worked and Wages Earned in Violation of Utah Code §§ 34-28-10, 34-28-3
### (Brought on behalf of Plaintiff Koontz and the Utah Class Members)

143.    Plaintiff Koontz re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

144.    Utah Code § 34-28-10(1)(a) states that every employer "shall keep a true and accurate record of time worked and wages paid each pay period to each employee who is employed on an hourly or a daily basis in the form required by the commission rules."

145.    As alleged herein, Defendant has not kept true and accurate time and wage records of its Adjusters.

146.    By refusing and failing to keep true and accurate records of the hours worked by Plaintiff Koontz and Utah Class Members, Defendant violated Utah Code § 34-28-10.

147.    Moreover, Utah Code § 34-28-3(5) requires an employer to provide a pay statement to every employee for each pay period that states "the number of hours the employee worked during the pay period."

148.    As alleged herein, Defendant failed to provide pay statements that accurately reflected the number of hours Plaintiff Koontz and Utah Class Members worked.

149.    By refusing and failing to keep true and accurate records of the hours worked by Plaintiff Koontz and Utah Class Members, Defendant also violated Utah Code § 34-28-3(5).

150.    Plaintiff Koontz and Utah Class Members seek injunctive relief for Defendant's violations of Utah Code §§ 34-28-10 and 34-28-3(5).

151.    Wherefore, Plaintiff Koontz and Utah Class Members request further relief as hereinafter provided.

## EIGHTH CAUSE OF ACTION
### Failure to Pay Wages for All Hours Worked
### in Violation of 26 M.R.S.A. § 629
### (Brought on behalf of Plaintiff Charrier and the Maine Class Members)

152.    Plaintiff Charrier re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

153.    Under Maine law, 26 M.R.S.A. § 629, an employer may not require or permit employees to perform work without compensation in order to maintain employment.

154.    Defendant expressly requires Plaintiff Charrier and Maine Class Members to meet Defendant's required quota within allotted hours in a day to avoid negative implications for their performance metrics, which may result in lesser compensation and/or disciplinary action including termination.

155.    Defendant implemented a policy and practice whereby Plaintiff Charrier and Maine Class Members are forced to work off-the-clock before and after scheduled shifts to meet Defendant's required quota. As a result, Defendant maintains a policy and practice of requiring work without compensation in violation of 26 M.R.S.A. § 629.

156.    In addition, Defendant implemented a policy and practice that fails to make bona fide meal periods available as required by 26 M.R.S.A. § 601. Even if Plaintiff Charrier and Maine Class Members are able to take a meal period, they are still "on-duty" or subject to interruption, and often are interrupted, during such meal periods, in direct violation of the statute.

157.    Because Plaintiff Charrier and Maine Class Members' meal periods are skipped, subject to interruption, or otherwise not duty-free, that is compensable time worked, and thus Plaintiff Charrier and Maine Class Members are entitled to wages for that time worked under 26 M.R.S.A. § 629.

158.    By failing to pay Plaintiff Charrier and Maine Class Members their earned wages, including wages for time worked before and after scheduled shifts, working or "on call" time during unpaid meal breaks, and time spent traveling to and working at conferences, Defendant's conduct described in the above paragraphs violates 26 M.R.S.A. § 629(1).

159.    Employers who violate 26 M.R.S.A. § 629 are liable for "unpaid wages or health benefits adjudged to be due, a reasonable rate of interest, costs of suit including reasonable attorney's fee, and an additional amount equal to **twice** the amount of unpaid wages as liquidated damages." 26 M.R.S.A. § 626-A

160.    "Unpaid wages" within the meaning of 26 M.R.S.A. § 626-A are wages at the employee's contract rate, not minimum wage.

161.    Pursuant to 14 M.R.S.A. § 752, Plaintiff Charrier and Maine Class Members seek damages for the period beginning six years prior to the filing of this lawsuit.

162.    Wherefore, Plaintiff Charrier and Maine Class Members request relief as hereinafter provided.

<u>**NINTH CAUSE OF ACTION**</u>
**Failure to Pay Overtime Wages**
**in Violation of 26 M.R.S.A. § 664**
**(Brought on behalf of Plaintiff Charrier and the Maine Class Members**

163.    Plaintiff Charrier re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

164.    Under Maine law, 26 M.R.S.A. § 664(3), an employer may not require an employee to work more than 40 hours in any one week unless the employer pays the employee one and one-half times the regular hourly rate for all hours actually worked in excess of 40 in that week.

165.    Defendant's conduct described in the paragraphs above violates 26 M.R.S.A. § 664(3) by failing to pay Plaintiff Charrier and the Maine Class Members overtime compensation for all hours worked in excess of 40 in a week

166.    Employers who violate 26 M.R.S.A. § 664 are liable for "the unpaid wages adjudged to be due, an additional amount equal to such wages as liquidated damages, and costs of suit including reasonable attorney's fee." 26 M.R.S.A. § 670.

167.    Pursuant to 14 M.R.S.A. § 752, Plaintiff Charrier and Maine Class Members seek damages for the period beginning six years prior to the filing of this lawsuit.

168.    Wherefore, Plaintiff Charrier and Maine Class Members request relief as hereinafter provided.

## PRAYER FOR RELIEF

169.    Designation of this action as an FLSA collective action on behalf of Plaintiffs and the FLSA Collective, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

170.    Certification of the Vermont, Utah, and Maine Classes pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), and the appointment of Plaintiffs Rowden, Koontz, and Charrier, and their counsel to represent those Classes, respectively;

171.    Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the FLSA and applicable laws of Vermont, Utah, and Maine;

172.    For a declaratory judgment that Defendant has violated the FLSA, applicable laws of Vermont, Utah, and Maine, and public policy as alleged herein;

173.    For preliminary, permanent, and mandatory injunctive relief prohibiting Defendant, its officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

174.    For an equitable accounting to identify, locate, and restore to all current and former Adjusters the wages they are due, with interest thereon;

175.    For an order awarding Plaintiffs and putative Collective and Class Members liquidated and compensatory damages, including lost wages, earnings, and other employee benefits, restitution, statutory penalties, and all other sums of money owed to Plaintiffs and putative Collective and Class Members, together with interest on these amounts, according to proof;

176.    For an award of reasonable attorneys' fees as provided by the FLSA and applicable laws of Vermont, Utah, and Maine;

177.    For all costs of suit;

178.    For interest on any damages and/or penalties awarded, as provided by applicable law; and

179.    For such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 31, 2021

Respectfully submitted,

Brett D. Watson
bwatson@schneiderwallace.com
SCHNEIDER WALLACE COTTRELL
KONECKY, LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105

Carolyn H. Cottrell*
ccottrell@schneiderwallace.com
David C. Leimbach*
dleimbach@schneiderwallace.com

SCHNEIDER WALLACE COTTRELL
KONECKY, LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105

Gregg I. Shavitz*
Tamra Givens*
SHAVITZ LAW GROUP, P.A.
951 Yamato Road, Suite 285
Boca Raton, Florida 33431
Telephone: (561) 447-8888
Facsimile:      (561) 447-8831
gshavitz@shavitzlaw.com
tgivens@shavitzlaw.com

Michael J. Palitz*
SHAVITZ LAW GROUP, P.A.
800 Third Avenue, Suite 2800
New York, NY 10022
Tel: (800) 616-4000
Facsimile: (561) 447-8831
mpalitz@shavitzlaw.com

Paige T. Bennett*
DANIELS & TREDENNICK PLLC
6363 Woodway Drive, Suite 700
Houston, Texas 77057
Telephone: (713) 917-0024
Facsimile: (713) 917-0026
paige.bennett@dtlawyers.com

*Application for admission forthcoming

*Attorneys for Plaintiffs, Class, and
Collective Members*