IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| BRIDGET BISCARDI, CRAIG NEIDLINGER, and STEPHANIE KOONTZ, on behalf of themselves and all others similarly situated, | * * * | |
| Plaintiffs, | * | Case No.: GJH-21-2240 |
| v. | * | |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, d/b/a GEICO, a Maryland Corporation, | * * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiffs Bridget Biscardi, Craig Neidlinger, and Stephanie Koontz, individually and on behalf of all others similarly situated, bring this civil action against Defendant Government Employees Insurance Company, Inc. ("GEICO"), for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. Pending before the Court is Plaintiffs' Motion for Conditional Certification. ECF No. 42. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Plaintiffs' Motion is granted.

**I.   BACKGROUND**

This action arises out of Defendant GEICO's alleged violations of the FLSA for failure to compensate employees for overtime work. Plaintiffs bring this action on behalf of themselves and all other non-exempt Auto Claim and/or Damage Adjusters (collectively, "Adjusters") throughout the United States (with the exception of those employed in California, Florida,

Massachusetts, New Jersey, New York, North Carolina, Ohio, and Pennsylvania). ECF No. 42-1 at 1.[1]

Unless otherwise specified, the following facts are taken from Plaintiffs' Amended Complaint. *See* ECF No. 41. GEICO is an insurance company that employs Adjusters to investigate auto insurance claims and determine GEICO's liability. *Id.* ¶ 4, 26. GEICO is a Maryland corporation with a principal place of business in Maryland. *Id.* ¶ 17. According to the Amended Complaint, Plaintiffs Biscardi, Neidlinger, and Koontz are employees who previously worked or continue to work for GEICO as Adjusters.[2] *Id.* ¶¶ 13–15. Adjusters have numerous duties, including the following: processing insurance claims; calling customers; inspecting vehicles for collision and comprehensive damages; managing accurate funds for issuance of claims payments; submitting online reports; and driving to customer homes or working in auto body shops to assess vehicle damage. *Id.* ¶ 27.

As Adjusters, Plaintiffs assert that they were required to meet a quota of processing or working on assigned claims. *Id.* ¶ 28. Adjusters are commonly scheduled to work 7.75 hour per day, five days per week, for a total of approximately 38.75 hours of work per week. *Id.* ¶ 29. Each day is scheduled to be approximately 8.5 hours long, with a 45-minute lunch break. *Id.* However, Plaintiffs allege that they were regularly required to work additional hours beyond this schedule and were pressured not to report the extra hours worked. *Id.* ¶¶ 29–30. Thus, they worked additional hours while "off the clock" and without receiving compensation. *Id.* GEICO allegedly pressured Plaintiffs not to report overtime work by disciplining employees who did not

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[2] The Court has granted parties' Stipulation to Dismiss Plaintiff Charrier's Individual Claims with Prejudice, dismissing Plaintiff Charrier from the action in its entirety. *See* ECF No. 81.

reach their quotas during regular working hours. Plaintiffs claim that if an employee did not meet their quotas for claims, inspections, or customer calls, they could be written up by a manager, be placed on probation, or face reduced performance scores, which impact compensation and promotion opportunities. *Id.* ¶ 30. Thus, Plaintiffs allege that they regularly began work early, stayed late, or skipped their designated lunch periods in order to meet their quotas—time worked that was unpaid. *Id.* ¶¶ 31–33. Further, Plaintiffs allege that GEICO and its managers "routinely manipulate timecards of employees" in order to make it appear that employees took their designated meal break even when they did not. *Id.* ¶ 34. Plaintiffs also assert that employees complete these overtime tasks while logged into Defendant's online system to submit claims and other documentation in real time, and therefore, Defendant knows or should know that work is being completed without compensation. *Id.* ¶¶ 31–32. According to the Amended Complaint, GEICO's purportedly unlawful conduct has been "widespread, repeated, and consistent … throughout [its] operations in the United States" and its actions "stem from a corporate policy to limit labor expenses." *Id.* ¶ 40.

In their Motion for Conditional Certification, Plaintiffs submit that 16 Named and Opt-in Plaintiffs, who have "worked in many locations around the country, under multiple different supervisors," have filed consents to join this action. *See* ECF No. 42-1 at 3. Plaintiffs have submitted 12 declarations on behalf of GEICO Adjusters attesting to the allegations described above.[3] *See* ECF No. 42-2 at Exs. A, B, C, D, E, F, G, H, I, J, K, U. Plaintiffs allege that they have also identified "over 30 additional Adjusters" subject to GEICO's common practice of requiring Adjusters to work off-the-clock without pay. ECF No. 42-1 at 4. Plaintiffs have also

---

[3] Totals include a consent and declaration by Plaintiff Colby Charrier, whose claims have been dismissed by joint stipulation. *See supra* note 2.

submitted 18 declarations by Adjusters who have brought claims in factually similar cases around the country. ECF No. 42-2 at Ex. L.

On August 31, 2018, Plaintiffs filed a Complaint against Defendant. ECF No. 1. On April 28, 2022, Plaintiffs filed an Amended Complaint, ECF No. 41, and on April 29, 2022, Plaintiffs filed a Motion for Conditional Certification pursuant to section 216(b) of the FLSA, ECF No. 42. On May 27, 2022, Defendant responded to Plaintiffs' Motion for Conditional Certification, ECF No. 59, and on June 10, 2022, Plaintiffs replied, ECF No. 64. Plaintiffs have also filed several notices of supplemental authority. *See* ECF No. 68; ECF No. 73; ECF No. 74; ECF No. 75; ECF No. 80; *see also* ECF No. 42-2 at Exs. M, N.[4]

## II.   LEGAL STANDARD

Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1031–32 (4th Cir. 2020) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). The FLSA generally requires that covered employees who work more than 40 hours in a week receive overtime pay of one-and-one-half times their regular pay rate. 29 U.S.C. § 207(a). In the case of a violation, employees may sue their employers as individuals, or they may sue in a collective action on behalf of themselves and "similarly situated" employees. *Id.* § 216(b); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 758 (4th Cir. 2011). Unlike in a class action filed pursuant to Federal Rule of Civil Procedure 23, section 216 of the FLSA "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court

---

[4] Separately, the parties have agreed to dismiss the claims alleged on behalf of putative Maine and Utah classes. *See* ECF No. 77; ECF No. 78. Plaintiff Koontz continues to assert individual wage and hour claims under Utah law, in addition to the FLSA claims discussed in this Memorandum.

The Court will also grant Plaintiffs' Motion for Leave to Withdraw as Counsel, ECF No. 48, and Plaintiffs' Motion for Admission Pro Hac Vice, ECF No. 51.

4

of their intentions to be a party to the suit." *Lee v. Solar Energy World, LLC*, No. CV RDB-19-1993, 2021 WL 915287, at *3 (D. Md. Mar. 10, 2021) (quoting *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008)).

Whether or not to conditionally certify the collective action is a matter of court discretion. Courts in this district follow a two-step inquiry for evaluating a collective action: "(1) a pre-discovery determination that the purported class is similarly situated enough to disseminate notice (the 'notice stage'); and (2) a post-discovery determination, typically in response to a motion for decertification, that the purported class is indeed similarly situated." *Lancaster v. FQSR*, No. CV TDC-19-2632, 2020 WL 5500227, at *2 (D. Md. Sept. 11, 2020) (collecting cases).

At the first stage, courts "make a threshold determination whether the class is similarly situated based on 'substantial allegations' in the pleadings and any submitted affidavits or declarations." *Id.* (citation omitted). If plaintiffs can make "a minimal evidentiary showing" that they can meet the requirements of section 216(b) of the FLSA, then the collective action may proceed "on a provisional basis." *Lee*, 2021 WL 915287, at *3. Following discovery, courts proceed to the second stage, whereby they "engage[ ] in a more stringent inquiry" to determine whether plaintiffs have met the burden of showing that opt-in participants are in fact similarly situated, such that moving forward with the collective action is appropriate. *Santos v. E&R Servs., Inc.*, No. DLB-20-2737, 2021 WL 6073039, at *2 (D. Md. Dec. 23, 2021) (quoting *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010)).

### III. DISCUSSION

As explained above, a plaintiff may obtain conditional certification if they "can demonstrate that they were victims of a common policy, scheme, or plan that violated the law."

*Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012). At the notice stage, courts often apply "a fairly lenient standard" because "the record is sparse." *Lancaster*, 2020 WL 5500227, at *3 (citation omitted); *see Yeibyo v. E-Park of DC, Inc.*, No. CIV A DKC 2007-1919, 2008 WL 182502, at *7 (D. Md. Jan. 18, 2008) (noting that the "fairly lenient standard," as employed, "typically results in conditional certification"). This lenient approach is necessary "to be consistent with the FLSA's purposes of promoting efficient joint adjudication of claims, lowering the costs of litigation to employee plaintiffs, and accounting for employees' natural reluctance to challenge an employer." *Lancaster*, 2020 WL 5500227, at *3.

Here, Plaintiffs allege that Defendant GEICO pressured Adjusters to work off-the-clock and without compensation, in violation of the FLSA. *See* ECF No. 42-1 at 3. To support their position, Plaintiffs assert that 16 Named and Opt-in Plaintiffs have filed consents to join the action, with another 30 Adjusters identified as being subject to the same unlawful employment practices. *Id.* at 3–4. Plaintiffs have submitted declarations from 12 Adjusters across the country, and they have submitted an additional 18 declarations from plaintiffs in factually similar cases. *Id.* at 12. Taken together, Plaintiffs argue that they have met the lenient burden required for conditional certification.

Defendants, however, contend that conditional certification is not appropriate for several reasons. First, they argue that Plaintiffs provide no evidence of explicit direction by management or a GEICO policy demanding employees work off the clock. ECF No. 59 at 31. As Defendants assert, "[t]here is no account of any specific communication from management, much less any specific directive to work overtime without recording it." *Id.*

Nevertheless, while it is true that "mere allegations" are not sufficient to support conditional certification, *Chapman v. Ourisman Chevrolet Co.*, No. CV AW-08-2545, 2009 WL

6

10685449, at *3 (D. Md. Apr. 14, 2009), it is equally true that "employees cannot be expected to have evidence of a stated policy of refusing to pay overtime," *Quinteros*, 532 F. Supp. 2d at 772 (quoting *Marroquin v. Canales*, 236 F.R.D. 257, 260–61 (D. Md. 2006)). Courts look to "factual evidence by affidavits or other means" to determine whether the threshold showing has been met. *Chapman*, 2009 WL 10685449, at *3.

Here, Plaintiffs have provided numerous declarations that establish that they personally worked at GEICO as Adjusters at various locations around the country and that "they all were required to perform work that was often not reflected in their paychecks." *Lancaster*, 2020 WL 5500227, at *4. Plaintiffs report "the same or similar tactics were employed by supervisors" to avoid the reporting of overtime work, and they assert that "they personally observed and heard from co-workers of similar off-the-clock manipulation." *Id.* For instance, Plaintiff Biscardi provides a detailed account of regularly working before and after her daily shifts, and during her lunch break, in order to complete her quotas. ECF No. 42-2 at Ex. B ¶¶ 9–11. Biscardi further attests that:

> GEICO pressured Auto Claim and/or Damage Adjusters to not record all time worked and supervisors, including [Plaintiff's personal supervisors], frequently reiterated that we could not record overtime hours due to GEICO's budget, pay restrictions, and productivity metrics. If we recorded any more time than allotted to complete our quota of claims, it would hurt our productivity metrics and could result in discipline.

*Id.* ¶ 13.

Biscardi adds that her co-workers faced similar challenges because "we discussed the duties we completed off-the-clock and how frustrating it was to work unpaid time, including how we had to work through our meal breaks without pay." *Id.* ¶ 12. Declarations provided by the other Plaintiffs include the same or similar allegations. *See* ECF No. 42-2 at Exs. A, C, D, E, F,

7

G, H, I, J, K, L, U. Thus, taken together, the Court finds that Plaintiffs have alleged a common policy sufficient to warrant conditional certification.

Defendants also assert that certification is inappropriate because Plaintiffs' claims are too individualized to support a collective action. ECF No. 59 at 34. To determine whether plaintiffs can show that employees are similarly situated, courts consider whether employee claims "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from similar job requirements and pay provisions." *Calderon v. Geico Gen. Ins. Co.*, No. RWT 10CV1958, 2011 WL 98197, at *4 (D. Md. Jan. 12, 2011) (quoting *Robinson v. Empire Equity Grp., Inc.*, No. CIV. WDQ-09-1603, 2009 WL 4018560, at *2 (D. Md. Nov. 18, 2009)). Employees may be similarly situated where their "essential duties appear to be the same." *Robinson*, 2009 WL 4018560, at *4. Nevertheless, this inquiry will be limited at the notice stage because courts are not to "delve into the merits" of the case. *Blake v. Broadway Servs., Inc.*, No. CV CCB-18-086, 2018 WL 4374915, at *3 (D. Md. Sept. 13, 2018).

Here, Plaintiffs provide that Adjusters' duties include the following: processing insurance claims; calling customers; inspecting vehicles for collision and comprehensive damages; managing funds for the issuance of claim payments; submitting online reports; and driving to customer homes or working in auto body shops to assess vehicle damage. ECF No. 41 ¶ 27. The Adjusters are allegedly non-exempt employees who are entitled to overtime pay for any hours worked over 40 hours per week, but who have been discouraged or disincentivized from reporting overtime worked. *Id.* ¶¶ 18, 29, 30. Plaintiffs are also subject to quotas of claims, inspections, and/or customer calls, and may face discipline or other negative consequences if they do not meet those quotas within regular working hours—even if it is not feasible to meet the quotas within the standard workday. *Id.* ¶ 30. As such, the Court finds that "all members of the

proposed class share at least a manageably similar factual setting with respect to job requirements and pay provisions" and "common questions of law and liability predominate." *Njoroge v. PrimaCare Partners, LLC*, No. CV 22-0425-BAH, 2022 WL 4465894, at *5 (D. Md. Sept. 26, 2022) (citations omitted).

      Defendants further assert that certification of a nationwide collective is "rare." ECF No. 59 at 29; *see Smith v. Smithfield Foods, Inc.*, No. 2:21-CV-194, 2021 WL 6881062, at *9 (E.D. Va. Dec. 21, 2021), *report and recommendation adopted*, No. 2:21CV194, 2022 WL 407378 (E.D. Va. Feb. 9, 2022) (denying nationwide certification where FLSA claims involved three corporate entities and a partially unionized workforce). However, courts in this district have found that conditional certification of a nationwide collective may be appropriate where the "claims appear to arise from similar job requirements and pay provisions across the country." *Robinson*, 2009 WL 4018560, at *3. As explained above, Plaintiffs have properly alleged that GEICO Adjusters across the country share the same "essential duties" as required for a collective action, at least at this stage. Further, although the "crux of the 'similarly situated' analysis is not quantitative," *Butler*, 876 F. Supp. 2d at 569 n.10, the Court would note that Plaintiffs have nonetheless provided a substantial number of declarations from employees across a number of states alleging factually similar issues.

      Finally, Defendant appears to suggest that this Court should follow the lead of courts that apply "a higher standard" to plaintiffs when "some discovery has taken place" before a decision is made on conditional certification. ECF No. 59 at 30. The so-called intermediate approach "helps the Court to make an educated decision as to whether certifying [a] matter as a collective action would survive the decertification process," so as to avoid "wasted resources for all parties involved." *Sloane v. Gulf Interstate Field Servs.*, No. 4:16-cv-01571, 2017 WL 1105236, at *7

(M.D. Pa. Mar. 24, 2017) (citation omitted). GEICO argues that Plaintiffs' "boilerplate" affidavits do not provide evidence of wrongdoing and that Plaintiffs' answers to interrogatories fail to provide "even one example of a statement by GEICO management supporting their claim that they were pressured not to report overtime." *Id.* at 32–33. GEICO also argues that it has provided Plaintiffs' counsel with "massive amounts of information including Company policies, time and payroll records, personnel files, and email and instant message files" connected to earlier filed cases in California, Colorado, Massachusetts, and North Carolina. *Id.* at 11.

Defendant, however, has not pointed to any cases in this district where the intermediate standard has been applied, and, further, "the majority of courts within the Fourth Circuit have declined to impose such a heightened standard at the notice stage." *McNeil v. Faneuil, Inc.*, No. 4:15CV81, 2016 WL 11673838, at *4 (E.D. Va. Aug. 3, 2016); *Santos v. E&R Servs., Inc.*, No. DLB-20-2737, 2021 WL 6073039, at *3 (D. Md. Dec. 23, 2021) (citing "20 years of precedent applying the two-stage certification process in FLSA cases"). At this time, the Court believes "it is premature to conclude that the evidence gleaned from limited discovery is representative of what the plaintiffs would present after full discovery." *Chapman v. Saber Healthcare Grp., LLC*, No. 2:20CV106, 2022 WL 3686477, at *4 (E.D. Va. Aug. 25, 2022). Accordingly, the Court declines to depart from the more lenient standard, as commonly applied.

Taken together, the Court grants Plaintiffs' Motion for Conditional Certification.

**B. Notice**

Once a collective is conditionally certified, a district court has "broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler*, 876 F. Supp. 2d at 574 (citation omitted). Plaintiffs seek to send notice of the suit to all GEICO Adjusters employed any time from August 31, 2018 to the present, with the exception of those employed in

California, Florida, Massachusetts, New Jersey, New York, North Carolina, Ohio, and Pennsylvania. ECF No. 42-1 at 21. Plaintiffs request to disseminate the notice via mail, email, and text, and they ask that reminder notices to be sent 30 days before the end of the 60-day opt-in period. *Id.* at 22.[5]

Defendant GEICO requests several modifications to Plaintiffs' dissemination plan. Among the concerns, GEICO asserts that Plaintiffs should be limited to a single mailed notice, and that it should therefore not be required to provide telephone numbers or email addresses for current and former employees, nor should it be required to produce locations or dates of employment. ECF No. 59 at 39. As Plaintiffs note, however, courts in the Fourth Circuit have frequently permitted FLSA notices to be distributed via text and email, and the Court does not find a compelling reason why notice in this matter should be limited to traditional mail. *See Thomas v. Maximus, Inc*, No. 3:21CV498 (DJN), 2022 WL 1482010, at *8 (E.D. Va. May 10, 2022) ("The Court authorizes Notice of the instant suit by mail, email and text message, as courts throughout the Fourth Circuit commonly do."). Indeed, "the addition of other modes of communication simply increases the likelihood that [potential Opt-in Plaintiffs] will be reached." *Boyd v. SFS Commc'ns, LLC*, No. CV PJM 15-3068, 2017 WL 386539, at *3 (D. Md. Jan. 27, 2017). That reasoning extends to a reminder notice sent 30 days before the opt-in deadline, which provides "nothing more than a targeted second contact with those likely to be eligible to join the collective action." *Id.* Thus, the Court will permit notices to be sent via mail, text, and email, and will permit the sending of one reminder notice through mail and email, as requested. *See* ECF No. 42-2 at Exs. O, P, Q, R, S.

---

[5] As provided in the accompanying Order, all information should be transferred in an electronic format, such as Excel or similar.

Likewise, the Court finds that production of information regarding dates of employment and location is commonly authorized in FLSA cases, in order to assist with the notification and opt-in process. *See, e.g., McCoy v. Transdev Servs., Inc.*, No. CV DKC 19-2137, 2020 WL 2319117, at *5 (D. Md. May 11, 2020) (ordering production of dates and locations of employment); *Errickson v. Paychex, Inc.*, 447 F. Supp. 3d 14, 29 (W.D.N.Y. 2020) (ordering same); *Koehler v. Freightquote.com, Inc.*, 93 F. Supp. 3d 1257, 1265 (D. Kan. 2015) (ordering same). As such, the Court will require GEICO to provide the requested information as part of its production to Plaintiffs.

Defendant also argues that employees in two additional states—Virginia and Tennessee—should be excluded, following a decision by the Eastern District of Virginia in a factually similar case denying conditional certification.[6] *See Meredith, et al. v. Government Employees Insurance Co.*, No. 21-106 (E.D. Va. Apr. 2, 2021), ECF No. 23. However, the decision in *Meredith* was rendered from the bench, and there is no written record of the legal analysis or pertinent facts upon which the district court based its decision. In light of this, and the numerous other cases granting conditional certification in factually similar litigation, the Court will not exclude Virginia or Tennessee at this stage. *See* ECF No. 42-2 at Exs. M, N; ECF No. 68; ECF No. 73; ECF No. 74; ECF No. 75; ECF No. 80.

Finally, GEICO asserts that it should be allotted ten business days, not ten calendar days, to produce a mailing list, and that the class should be limited to those employed at least "sometime in 2019," rather than as of August 31, 2018, because the statute of limitations for violations under the FLSA runs for two or three years from the time an individual files a consent form opting into litigation. In their reply brief, Plaintiffs agree to these requests, and, therefore,

---

[6] The case involved putative Collectives in Virginia, Tennessee, and North Carolina. Plaintiffs have already excluded North Carolina.

GEICO will have 10 business days from the date of this order to produce the requested employee information, and the list of potential members shall include those who were employed by GEICO as of three years prior to the date on which the list of Opt-In Plaintiffs is due. *See* ECF No. 64 at 18.

IV. **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion is granted. A separate Order follows.

Date: <u>January  11, 2023 </u>  　　　　　　　　　　　　　　　　　　____/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge